UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 25-50-DLB-CJS

AWESOME PRODUCTS, INC.,                                          PLAINTIFF


v.                          <u>MEMORANDUM OPINION AND ORDER</u>


JOYSUDS LLC,                                                    DEFENDANT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This case is before the Court upon Defendant JoySuds LLC's Motion to Dismiss. (Doc. # 12). Plaintiff Awesome Products, Inc. ("API") has filed its Response in Opposition (Doc. # 15) and JoySuds filed its Reply (Doc. # 18). The matter is now ripe for the Court's review. For the following reasons, JoySuds's Motion (Doc. # 12) is **granted** and the Complaint (Doc. #1) is **dismissed**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This dispute stems from an Asset Purchase Agreement entered into by API and Radienz Living Chicago, LLC ("Radienz") on September 13, 2022 (the "Asset Purchase Agreement"). Radienz (f/k/a New U.S. Nonwovens, LLC), owned and operated a liquid manufacturing business located in Ludlow, Kentucky. (Doc. # 1 at 1). Part of Radienz's business included the manufacturing of certain Joy-brand dish soap products for JoySuds. (Doc. # 12-2 ¶ 2). Radienz and JoySuds memorialized this arrangement in a Supply Agreement dated January 26, 2022 (the "Supply Agreement"). (*Id.*). Under the terms of the Supply Agreement, Radienz was obligated to manufacture four specific Joy dish soap products "in strict compliance" with JoySuds's proprietary formulations. (*Id.*).

1

These products were to be sold exclusively to JoySuds at a pre-agreed price. (*Id.*). Likewise, the Supply Agreement provided that Radienz would "package, warehouse and store the Products for pick-up by JoySuds's logistic partner." (*Id.*).

Roughly eight months after Radienz and JoySuds consummated the Supply Agreement, Radienz entered the Asset Purchase Agreement with API. (Doc. # 1-1 at 6). Under the Asset Purchase Agreement, API would purchase the entirety of Radienz's liquid fulfillment business. (*Id.*). Among the assets acquired in this transaction was Radienz's inventory at the time, "including all raw materials, work in process, finished goods and goods and materials in transit, whether private label or otherwise which inventory was valued at approximately $8,400,000 as of August 30, 2022" (the "Inventory"). (*Id.* at 7). Additionally, pursuant to the Asset Purchase Agreement, Radienz assigned to API its rights and obligations under to the Supply Agreement. (*Id.*).

In late September 2022, shortly after API completed the purchase of Radienz's liquid fulfillment operation, it terminated the Supply Agreement. (Doc. # 12-3 ¶¶ 63-65). Around that time, API informed JoySuds that it would no longer be able to manufacture Joy dish soap for JoySuds. (Doc. # 12-3 Ex. C).

However, in June of 2024, JoySuds grew suspicious that API was using Joy labels and bottles it purchased in the Asset Purchase Agreement to produce a counterfeit Joy dish soap. (*Id.* Ex. D at 1). Specifically, JoySuds believed, due to customer complaints it received, that API was filling Joy-labeled bottles with substandard, non-Joy dish soap and offering this product for sale to various vendors. (*Id.*). Accordingly, on June 25, 2024, counsel for JoySuds served API with a cease-and-desist letter demanding that, *inter alia*, API halt the manufacture of this counterfeit Joy dish soap and provide JoySuds with an

inventory of the counterfeit Joy dish soap API had produced to date.  (*Id*. at 2).  On July 2, 2024, API, through its attorney, denied JoySuds's allegations that it was engaged in the production of counterfeit Joy dish soap and offered to discuss the matter further.  (*Id*. Ex. F).

On March 24, 2025, JoySuds sent a further cease-and-desist letter to API asserting that, based on JoySuds's own investigation and customer complaints, JoySuds believed that API was continuing to manufacture and sell counterfeit Joy dish soap using labels and bottles that were part of the Inventory API purchased in the Asset Purchase Agreement.[1]  (*Id*.).  As a result, JoySuds demanded that, within five days, API "[i]mmediately stop selling JOY 90 oz. lemon dish soap or offering for sale any counterfeit JOY products."  (*Id*. at 2).  JoySuds further demanded that API notify all retailers to "cease and desist from selling Joy 90 oz lemon dish soap" and to "[p]rovide a complete accounting regarding the quantity of the counterfeit products ordered, as well as the quantity sold and profits realized" alongside relevant supporting documentation.  (*Id*.).  Finally, JoySuds stated that, in the event API failed to timely comply with these demands, JoySuds was "prepared to seek all damages against [API], including commencing a legal action against [API] for trademark infringement and unfair competition."  (*Id*.).

API filed the present action on Monday, March 31, 2025—the first business day after JoySuds's five-day deadline for compliance.  (Doc. # 1).  API seeks a declaration that "it lawfully purchased the JoySuds products at issue and that it has the sole and exclusive right to sell, distribute and/or otherwise transfer the JoySuds products that were sold to API as part of the Asset Purchase Agreement."  (*Id.* ¶ 12).  Furthermore, API seeks

---

[1]    JoySuds further alleged that API was replicating these bottles and labels to produce the counterfeit Joy dish soap.

a declaration that "it has the lawful right to sell the JoySuds products in its possession under the Supply Agreement between Radienz Living and JoySuds to which API was an assignee." (*Id.* ¶ 13).  Ten days later, on April 10, 2025, JoySuds filed a sixty-eight-page complaint against API in the Southern District of New York.  (Doc. # 12-1 at 4; *see JoySuds LLC v. Awesome Products, Inc. d/b/a LA's Totally Awesome Products, Derm Cosmetic Labs, Inc., Menards, Inc., Ollie's Bargain Outlet Holdings, Inc., and Cost Club Corp.*, No. 1:25-cv-02977-DEH-HJR (S.D.N.Y April 10, 2025) (the "New York Action")).  The New York Action—which also names as defendants several vendors who were allegedly selling the counterfeit Joy products at issue in this case—raises sixteen causes of action, including violations of federal trademark law, violations of New York state law, and claims against API for Radienz's actions in relation to the Supply Agreement premised on a theory of successor liability.  (*See* Doc. # 12-3).

On July 21, 2025, JoySuds filed a Motion to Dismiss (Doc. # 12) API's Complaint (Doc. # 1).  JoySuds moves to dismiss API's declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).  (Doc. # 12-1 at 1).  API filed its Response in Opposition (Doc. # 15), JoySuds filed its Reply (Doc. # 18), and the matter is now ripe for the Court's review.

## II.    STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject matter jurisdiction.  On a motion under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject matter jurisdiction.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).  Such motions can attack a complaint in two ways: facially and factually.  *Ohio Nat'l Life Ins. Co.*

4

*v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack "merely questions the sufficiency of the pleading." *Id.* Thus, when reviewing a facial attack on a complaint, district courts "take[] the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.*

However, when a court reviews a factual attack on subject matter jurisdiction, there is no presumption of truthfulness. *Id.* Instead, if the facts presented "give rise to a factual controversy, the district court must . . . weigh the conflicting evidence" to determine if subject matter jurisdiction exists. *Id.* In its review of a factual attack, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Here, JoySuds launches a factual attack on the existence of subject matter jurisdiction. (Doc. # 12-1 at 6).

## III.    ANALYSIS

### 1.  *A justiciable controversy exists between JoySuds and API.*

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The Declaratory Judgment Act vests federal district courts with the power—in a case of actual controversy—to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Declaratory Judgment Act "does not 'change the essential requisites for the

5

exercise of judicial power.'" *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)). Article III of the Constitution provides that the jurisdiction of federal courts extends only to justiciable cases and controversies. U.S. Const. art. III, § 2. So, "[t]o get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018). For a declaratory judgment action, this requires a demonstration that "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)).

Here, JoySuds offers two reasons why API cannot seek a declaratory judgment. First, JoySuds asserts that "[t]here is no actual controversy between the parties that stems from the Asset Purchase Agreement." (Doc. # 12-1 at 9). Second, JoySuds contends that API "has failed to demonstrate any actual harm or future harm in its Complaint as a result of its alleged controversy with JoySuds." (*Id.* at 11).

### A. Actual Controversy

JoySuds argues that, because API's claims "primarily arise out of the Asset Purchase Agreement," and because "JoySuds is not a party to the Asset Purchase Agreement," API has failed to allege an actual controversy involving Joysuds. (*Id*. at 9). Furthermore, to the extent that API seeks a declaration concerning "its assigned rights under the Supply Agreement," JoySuds maintains that the "express terms of the Supply Agreement establish that [API] has no rights in JoySuds' proprietary materials and therefore there is no actual controversy." (*Id.*). On the other hand, API argues that,

6

because Radienz assigned its rights under the Supply Agreement to API via the Asset Purchase Agreement, an actual controversy exists between JoySuds and API regarding these rights—notwithstanding the fact that Joysuds is not party to the Asset Purchase Agreement. (Doc. # 15 at 4). API maintains that there is "an inextricable relationship" between the Asset Purchase Agreement and the Supply Agreement and that API "is the bona fide purchaser of the JoySuds products" at issue here. (*Id.*). Finally, API claims that it succeeded to the exclusive right to sell these products under the Supply Agreement. (*Id.*).

Although, in a declaratory judgment action, it "is often difficult to draw a line between actual controversies and attempts to obtain advisory opinions," the Court finds that an actual controversy exists in this case. *Kardules*, 95 F.3d at 1343-44. At the time API filed its Complaint (Doc. # 1), the Parties were at loggerheads regarding their rights with respect to the Inventory API purchased in the Asset Purchase Agreement. (*See* Doc. # 12-3 Ex. F). This disagreement continues to the present—before this Court and in the New York Action. API seeks a declaration that it has the "sole and exclusive right" to sell the JoySuds products it purchased as part of the Asset Purchase Agreement *and* that API has the "lawful right to sell the JoySuds products in its possession under the Supply Agreement." (Doc. # 1 ¶¶ 12, 13). JoySuds diametrically opposes these arguments and contends that API has no right to sell these products, nor any rights "whatsoever in JoySuds' proprietary materials" under the Supply Agreement between Radienz and JoySuds. (Doc. # 12-1 at 10).

The Court is not convinced by JoySuds's argument that, because it was not party to the Asset Purchase Agreement, API's "controversy is not with JoySuds" but with

Radienz.  (Doc. # 18 at 5).  API and JoySuds claim adverse ownership interests in the Inventory.  (*See* Doc. # 1 ¶ 8 ("Included in the Asset Purchase Agreement were certain inventory and products over which JoySuds is now claiming ownership.")).  Therefore, the two parties are embroiled in a controversy regarding their legal rights, regardless of whether they were both party to the Asset Purchase Agreement.  Additionally, API's proposed declaratory judgments have a "conclusive character" that would establish the parties' rights with respect to parts of the Inventory going forward.  *See Mikel*, 58 F.4th 252 at 259; *see also Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*") (emphasis in original).

### B.  Standing

Aside from its contention that API has failed to identify an actual controversy, JoySuds also argues that API lacks standing to seek declaratory relief.  (Doc. # 12-1 at 10).  More precisely, JoySuds asserts that API lacks standing because it "has failed to demonstrate an actual present or future harm to warrant declaratory relief."  (*Id.*).  In response, API points to litigation, both in this Court and the New York Action.  (Doc. # 15 at 4).  API suggests that it would "lose resulting profit on [the products at issue], and suffer reputational damage from the vendors that have already purchased [the products at issue] if JoySuds prevails in this or the New York Action."  (*Id.* at 4-5).

"[T]he 'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of* Wildlife, 504 U.S. 555, 560-61 (1992)).  To prove an injury in fact, a plaintiff must demonstrate "a concrete and particularized, actual or imminent invasion of a legally protected interest."  *Lujan*, 504 U.S. at 555.  A "'threatened injury' can satisfy the imminence requirement if it is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."  *United States Dep. Of Treasury v. Nat'l Treasury Emp. Union, Ch. 73*, 783 F. Supp. 3d 991 at 1005-06 (E.D. Ky. 2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation omitted)).  Therefore, before seeking a declaratory judgment, a plaintiff "must show that they face a potential future harm that is 'certainly impending.'"  *Bowles v. Whitmer*, 120 F.4th 1304, 1311 (6th Cir. 2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

API argues that the "impending harm to API is clear."  (Doc. # 15 at 4).  JoySuds demanded that API stop selling some of the Inventory it allegedly purchased as part of the Asset Purchase Agreement.  (*Id.*).  Thus, at the time API sought declaratory relief from this Court, it found itself between a proverbial rock and a hard place.  On one hand, API could cease selling the products at issue.  In the process, API would miss out on profit from the sale of such products, and it would suffer reputational damage as a result of its failure to fulfill pre-existing orders placed by vendors seeking to purchase the products.  (*Id*. at 4-5).  On the other hand, API could continue to sell these products and subject itself to potential liability.[2]  The Supreme Court has observed that this situation— "putting the challenger to the choice between abandoning his rights or risking

---

[2]      Indeed, this is precisely what happened, as JoySuds has filed its own complaint in the New York Action alleging that API unlawfully retained and distributed JoySuds products. (Doc. # 12-3 ¶¶ 69-70).  Further, JoySuds alleges that API unlawfully continues to possess and distribute such products.  (*Id*. ¶¶ 212-13).

prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune*, 549 U.S. at 129 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)).  Further, courts in this Circuit have found a cognizable injury in fact where a plaintiff facing impending litigation filed suit for a declaratory judgment. *See, e.g.*, *Settlemyre Indus., Inc. v. E-Biofuels, LLC*, No. 08-cv-170, 2009 WL 10679227, at *4 (S.D. Ohio Oct. 21, 2009).  Indeed, acknowledging the Supreme Court's decision in *MedImmune*, the Sixth Circuit has held that a declaratory judgment plaintiff lacks standing where its prospective liability would only arise in the wake of a speculative "chain of contingencies."  *Hemlock*, 747 F. App'x at 291-92 (finding that plaintiff's claim for declaratory judgment was non-justiciable where, under the terms of a contract, "[the respondent] would need to default, [the appellant] would need to serve notice of default, 180 days would have to pass in which [the respondent] could cure, and at the close of that period [the appellant] would need to elect to terminate the contract").  This differs markedly from a situation in which a declaratory judgment plaintiff confronts an immediate choice between incurring financial injury or exposing itself to liability.  *Kiekert de Mexico S.A. de CV v. Brose Jefferson, Inc.*, 787 F. Supp. 3d 818, 826 (E.D. Mich. 2025).  Such a scenario is "sufficient to establish standing."  *Id.* (citing *MedImmune*, 549 U.S. at 131-34).  Because API has alleged that it finds itself in such a dilemma, it has identified an injury in fact sufficient to establish standing.

### 2. The Court declines to exercise its discretionary jurisdiction over this declaratory judgment action.

Regardless of whether the Court *can* exercise jurisdiction over a declaratory judgment action, the Court must also ask whether it *should* exercise such jurisdiction.[3] "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (describing district courts' "unique and substantial discretion in deciding whether to declare the rights of litigants"). Although the Court's jurisdiction over API's declaratory judgment claim constitutes a matter of discretion, the Court "may not 'decline to entertain [an] action as a matter of whim or personal disinclination,' but must exercise its judicial discretion under the Act 'in the public interest.'" *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 2:20-cv-5854, 2021 WL 2309571, at *2 (S.D. Ohio June 7, 2021), *report and recommendation adopted sub nom. Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:20-cv-5854, 2021 WL 3184947 (S.D. Ohio July 28, 2021), *aff'd*, 29 F.4th 792 (6th Cir. 2022) (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990)).

---

[3]     JoySuds makes its arguments regarding the Court's discretionary jurisdiction under Rule 12(b)(1). (Doc. # 12-1 at 11-14). Courts in this Circuit have "observed that Rule 12(b)(1) is not a perfect 'vehicle for a motion reliant on' the *Grand Trunk* factors because the doctrine does not 'explicitly challenge[] this Court's subject matter jurisdiction.'" *Everett Cash Ins. Co. v. Howell*, No. 2:24-cv-4227, 2025 WL 1756889, at *2 (S.D. Ohio Jun. 25, 2025) (quoting *OMT Addiction Ctrs., LLC v. Freedom Healthcare Props. Of Tex., LLC*, 770 F. Supp. 3d 1090, 1102 (M.D. Tenn. 2025)). Indeed, courts in the Sixth Circuit have "inconsistently applied both Rule 12(b)(1) and Rule 12(b)(6) to motions to dismiss brought pursuant to . . . the *Grand* Trunk factors." *OMT Addiction Ctrs., LLC*, 770 F. Supp. 3d at 1101. However, because dismissal pursuant to the *Grand Trunk* doctrine would not constitute a judgment on the merits, Rule 12(b)(1) "is the more appropriate vehicle for dismissal." *Id.* at 1102.

### A. The First-to-File Rule

As a preliminary matter, JoySuds urges the Court to forego application of the "first-to-file" rule. (Doc. # 12-1 at 13). This rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (quoting *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). However, federal courts regularly dispense with the first-to-file rule in cases involving "inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide*, F. App'x at 437. The Sixth Circuit has observed that these prudential considerations create "a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir. 2004); *see also Nationwide Affordable Housing Fund 27, LLC v. Urban 2004 Holding Co.*, No. 2:20-cv-1762, 2020 WL 3642575, at *2 (S.D. Ohio Jul. 6, 2020) ("The first-to-file rule is particularly anemic where the first-filed lawsuit is a declaratory judgment action." (citing *Certified Restoration*, 511 F.3d at 551-52)); *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 663 (N.D. Ohio 2019) (noting that the usefulness of a declaratory judgment is "significantly curtailed once a subsequent, coercive suit is filed" (citing *AmSouth*, 386 F.3d at 788)).

The Court declines to apply the first-to-file rule here. Because API filed this action in anticipation of a coercive suit, the first-to-file rule is "particularly anemic" in this case. *Nationwide Affordable Housing Fund*, 2020 WL 3642575, at *2. On March 24, 2025, counsel for JoySuds sent API a cease-and-desist letter alleging that API was unlawfully

using the proprietary materials it purchased from Radienz to produce and sell "counterfeit JOY products." (Doc. # 12-3, Ex. F at 2). Further, JoySuds, through counsel, demanded that, within five days, API (1) stop selling "JOY 90 oz. lemon dish soap" or "any counterfeit JOY products," (2) turn over API's "entire inventory of JOY 90 oz. lemon dish soap," (3) notify all retailers to cease the sale of 90 oz. JOY lemon dish soap, (4) send JoySuds "a complete accounting regarding the quantity of the counterfeit products ordered, as well as the quantity sold and profits realized," and (5) provide JoySuds with relevant documentation regarding the production and sale of such products. (*Id.*). Significantly, JoySuds made clear that if API failed to meet these demands within five days, JoySuds was "prepared to seek all damages against [API], including commencing a legal action against [API] for trademark infringement and unfair competition." (*Id.*). API failed to meet any of JoySuds's demands and, on March 31, 2025—the first business day after the five-day period had expired—API filed this declaratory judgment action. (Doc. # 12-1 at 4).

API claims that it did not race to the courthouse in an effort to defeat liability in a future, coercive suit. (Doc. # 15 at 7). API argues that JoySuds never explicitly stated that it would file a lawsuit on the expiration of the five-day period and made only a "vague threat of litigation" at some point in the future. (*Id.*).

The Court is unpersuaded by these arguments. First, the contents and context of JoySuds's March 24, 2025 cease-and-desist letter plainly demonstrated JoySuds's intention to file a lawsuit. The letter, which was sent by retained counsel, clearly outlined the activities JoySuds considered unlawful, made explicit demands, and established an unambiguous timeline for compliance. (Doc. # 12-3, Ex. F at 1-2). As a result, API had no misgivings that, should it fail to timely comply with JoySuds's demands, litigation would

follow.  Second, even if API did not know the exact date on which JoySuds would file its complaint, this declaratory judgment action was clearly filed in anticipation of imminent litigation.  This provides sufficient grounds for disregarding the first-to-file rule.  *See Scepter, Inc. v. Metal Bulletin Ltd.*, 165 F. Supp. 3d 680, 686 (M.D. Tenn. 2016) (finding a declaratory judgment action anticipatory where the declaratory judgment plaintiff was aware that the defendant was "willing to litigate" despite the absence of a specific deadline).  Accordingly, the Court declines to apply the first-to-file rule here.  *See AmSouth*, 386 F.3d at 791 n. 8 ("In any case, the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action." (citing *Zide*, 2001 WL 897452, at *3)).

### B.  The *Grand Trunk* Factors

Having declined API's invitation to apply the first-to-file rule, the Court now turns to the question of whether it should exercise jurisdiction over this declaratory judgment action.  In answering this question, the Court must bear in mind certain first principles.  Specifically, the Court must consider: (1) whether a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).  In making this determination, the Sixth Circuit has prescribed five factors for a district court's consideration (the "*Grand Trunk* factors"):

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly

encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citing *Grand Trunk W. R. Co.*, 746 F.2d at 326). Although these factors provide "useful benchmarks [that] must be considered, the ultimate decision about whether to accept jurisdiction is left to the 'unique and substantial' discretion of the Court." *Nami Res. Co., LLC v. S. Miss. Elec. Power Ass'n*, No. 12-cv-68-GVT, 2013 WL 1332777, at *4 (E.D. Ky. Mar. 29, 2013) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (quotation omitted)). The Sixth Circuit has "never assigned weights to the *Grand Trunk* factors when considered in the abstract . . . ." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citing *Flowers*, 513 F.3d at 563). However, the "factors are not, of course, always equal" and the "relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Id.*

The first *Grand Trunk* factor asks whether the declaratory relief sought would "settle the controversy." *Grand Trunk W. R. Co.*, 746 F.2d at 326. In its Motion to Dismiss, JoySuds argues that, because the Asset Purchase Agreement "is, for the most part, irrelevant to the claims asserted by JoySuds" in the New York Action, the declaratory relief sought here "would not settle the controversy." (Doc. # 12-1 at 12). API, on the contrary, claims that because "every single claim asserted by JoySuds in [the New York Action] are [sic] derivative of API's right to sell the disputed products under the Asset Purchase Agreement[,]" the declaratory relief it seeks here "may well be dispositive of [the New York Action]." (Doc. # 15 at 6).

The Court finds that the declaratory relief sought by API would not settle the controversy. To start, it is doubtful whether a declaratory judgment would resolve

JoySuds's claims in the New York Action related to API's alleged production and distribution of counterfeit Joy dish soap. (*See* Doc. # 12-3 ¶ 81). API seeks a declaration that it is "the rightful owner of the Joy products included in the [Asset] Purchase Agreement, with the right to sell those products in accordance with the Supply Agreement." (Doc. # 1 ¶ 9). Specifically, API argues that it had the right to sell "all inventories of [Radienz] located at [Radienz's Ludlow facility], including all raw materials, work in process, finished goods and goods and materials in transit . . . ." (*Id.* ¶ 6). However, in the New York Action, JoySuds alleges that API filled—and continues to fill—Joy dish detergent bottles ostensibly purchased in the Asset Purchase Agreement with "counterfeit detergent" that was not made according to Joy's proprietary formulations. (Doc. # 12-3 ¶¶ 84-85).

In the New York Action, JoySuds asserts claims under the federal trademark law (Counts I, II, III, and IV), injury to business in violation of New York General Business Law § 368–d (Count V), trademark infringement under New York law (Count VI), and unfair competition under New York law (Count VII). (*Id.* ¶ 153-97). Even if the Court declared that API lawfully purchased the Joy products described in the Asset Purchase Agreement and that API had "the right to sell *those* products in accordance with the Supply Agreement," questions would persist regarding API's right to use the Inventory to subsequently manufacture and distribute the allegedly counterfeit detergent. (Doc. # 1 ¶ 9) (emphasis added); *see also J.M. Smucker Co.*, 420 F. Supp. 3d at 662 (finding that declaring that a plaintiff did not infringe the defendant's rights to a trademark would not resolve the entirety of a controversy involving similar claims to the New York Action). Because the claims related to API's production and distribution of counterfeit detergent

would not be resolved by the declaratory relief requested here, the first *Grand Trunk* factor weighs against exercising jurisdiction.

This conclusion is bolstered by the fact that Counts X through XVI of the New York Action concern API's purported liability as Radienz's successor.  (*See* Doc. # 12-3 ¶ 306-79).   Among other claims, JoySuds alleges that Radienz breached a contract manufacturing agreement (the "CMA") between the two parties and that API, as Radienz's successor, is liable for this breach.  (*Id*. ¶ 311).   JoySuds also alleges that Radienz fraudulently induced JoySuds to enter into the CMA by making "numerous false statements of material fact."  (*Id*. ¶ 352).  Additionally, JoySuds claims that the transfer of Radienz's liquid business to API occurred as part of a "series of fraudulent transfers to make [Radienz] judgment proof."  (*Id*. ¶ 340).   JoySuds argues that this allegedly fraudulent transfer "left [Radienz] unable to pay the claims in the [a separate lawsuit between Radienz and JoySuds]" and, as a result, API is liable for the claims asserted therein.  (*Id*. ¶¶ 343-45).  The declaratory relief API seeks in this Court would not settle these claims.  Accordingly, this declaratory action would not settle the controversy between API and JoySuds and the first *Grand Trunk* factor weighs in favor of dismissal.

The second *Grand Trunk* factor asks whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue.  *AmSouth*, 386 F.3d at 786.  Although a declaration that API lawfully purchased the Inventory described in the Asset Purchase Agreement and that API had the exclusive right to sell certain Joy products included therein may offer some clarity regarding the legal relations at issue, "several courts, including the Sixth Circuit, have noted that the usefulness of a declaratory judgment action is significantly curtailed once a subsequent, coercive suit is filed."

*Internet Transaction Solutions, Inc. v. Intel Corp.*, No. 2:06-cv-035, 2006 WL 1281654, at *3 (S.D. Ohio May 8, 2006) (citing *AmSouth*, 386 F.3d at 788); *Lake Cumberland Reg. Hosp., LLC v. Haidek*, No. , 2010 WL 11646942, at *4 (E.D. Ky. Mar. 17, 2010) ("Moreover, the Sixth Circuit was emphatic that where resolution of a pending coercive suit would address the issues raised in the declaratory action, the second factor weighs 'heavily in favor of dismissing the declaratory judgment suit.'" (quoting *AmSouth*, 386 F.3d at 786)); *see also Tempeco Elec. Heater Corp v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (holding that a declaratory judgment "would serve no useful purpose" in light of a pending coercive suit). Indeed, the Sixth Circuit has noted that "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee the declaratory plaintiff [its] choice of forum." *AmSouth*, 386 F.3d 763. Such a guarantee would contravene the "policy underlying the Declaratory Judgment Act." *Id.*

As discussed above, the declaratory relief API requests would not answer every question or settle the controversy between the parties. At best, the declaration API requests here would offer some clarity with respect to some products contained in the Inventory. By contrast, the New York Action offers the potential for a more comprehensive resolution of the parties' dispute. The availability of this alternative means of resolution diminishes the usefulness of the declaratory relief sought here. On balance, the Court finds that, although there is some degree of uncertainty facing API which the instant action might be useful in resolving, the pendency of a separate, coercive action tips the second *Grand Trunk* factor in favor of dismissal.

Looking to the third *Grand Trunk* factor, the Court must determine "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326 (citations omitted). Courts in this Circuit have noted that "'this factor overlaps with many of the factors that the Sixth Circuit has indicated weigh against enforcement of the first-to-file rule;' i.e., inequitable conduct, bad faith, anticipatory suits, and forum shopping." *J.M. Smucker*, 420 F. Supp. 3d at 663 (quoting *Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *4). Indeed, this factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Scottsdale Ins. Co.*, 513 F.3d at 558 (quoting *AmSouth*, 386 F.3d at 788).

Here, JoySuds sent a series of cease-and-desist letters to API in relation to its production and sale of purported Joy products. (*See* Doc. 12-3, Exs. C, D, F). This string of communication culminated in JoySuds's March 24, 2025 letter demanding that API cease, among other things, the sale of counterfeit 90-ounce Joy lemon dish soap. (*Id.*, Ex. F at 2). This letter made clear—in no uncertain terms—that, should API fail to meet JoySuds's requests within five days, JoySuds was "prepared to seek all damages against [API], including commencing a legal action against [API] for trademark infringement and unfair competition." (*Id.*). On the first business day after this five-day period had elapsed, API filed the present Action. (Doc. # 1). JoySuds subsequently filed the New York Action on April 10, 2025, ten days after API filed the Complaint here. (Doc. # 12-3).

The Court finds that the third *Grand Trunk* factor weighs against exercising jurisdiction for many of the same reasons the Court declines to apply the first-to-file rule.

In this case, API clearly faced the prospect of a trademark infringement suit by JoySuds. JoySuds made its intention to file such a suit clear in its final cease-and-desist letter. (Doc. # 12-3, Ex. F).  Further, API was aware that such a suit would likely take place in New York—either in state or federal court—given that the Supply Agreement designates New York law as its governing law and that API—as Radienz's assignee—consented to jurisdiction in New York.  (Doc. # 12-2 ¶ 15.2).  Thus, API's decision to file this action in the Eastern District of Kentucky on the expiration of the five-day period for compliance constitutes forum shopping.  The fact that this Court may be a *permissible* forum does not defeat this conclusion.  *See AmSouth*, 386 F.3d at 789 ("[W]hether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred.").  Rather, in a case such as the present, the relevant inquiry is "whether the declaratory plaintiff has filed in an attempt to get [its] choice of forum by filing first."  *Id.*; *see also Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *7 (finding that a declaratory judgment plaintiff engaged in forum shopping when it filed an anticipatory suit in an otherwise permissible forum).

Here, it appears that API sought to preempt a coercive suit by the natural plaintiff—JoySuds—by filing this declaratory judgment action.  *See J.M. Smucker*, 420 F. Supp. 3d at 665 (finding that a declaratory judgment defendant was the natural plaintiff where it alleged trademark infringement and unfair competition by the declaratory judgment plaintiff).  Allowing API to use the Declaratory Judgment Act "'as an instrument of procedural fencing . . . to choose a forum'" would run counter to the Act's purpose.  *W. World Ins. Co. v. Hoey*, 773 F.3d 755. 761 (6th Cir. 2014) (quoting *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939)).  Further, exercising jurisdiction under these

circumstances would run contrary to public policy by incentivizing parties like JoySuds "to file infringement lawsuits without even attempting to resolve the dispute short of litigation." *Aeroflex USA, Inc. v. Armacell Enterp. GmbH*, No. 3:13-cv-485, 2014 WL 652912 (E.D. Tenn. Feb. 20, 2014). Considering the foregoing facts, the Court finds that API's Complaint was motivated by improper forum shopping. Thus, the third *Grand Trunk* factor weighs in favor of dismissal.

The fourth *Grand Trunk* factor encourages courts to consider a declaratory judgment action's effect on federalism. *Id.* The parties agree that this factor is neutral because the New York Action is pending before a district court in the Southern District of New York. (*See* Doc. # 12-1 at 14 (noting that "the fourth factor, concerning friction between federal and state courts, does not apply"); Doc. # 15 at 7 (observing that "the parties agree that fourth [sic] factor . . . does not apply here, as the New York Action is also pending in a federal court)).

In fact, API argues that because this case does not involve a pending action in a state court, the *Grand Trunk* factors do not apply at all. (Doc. # 15 at 5 ("As an initial matter, the *Grand Trunk* factors are irrelevant here as this is not a jurisdictional dispute between a federal court exercising its discretionary jurisdiction under 28 U.S.C. §§ 2201 and 2022 in lieu of the same being filed in state court.")). API is incorrect on this point. Courts in this Circuit regularly apply the *Grand Trunk* factors to cases involving competing federal actions. *See, e.g., Lake Cumberland Reg. Hosp.*, 2010 WL 11646942, at *5 (holding that "since there is no parallel state court proceeding between the parties, there is little risk of friction between federal and state courts"); *Aeroflex Enterp. GmbH*, 2014 WL 652912, at *4 ("The fourth factor is inapplicable because both pending actions were

filed in federal court."); *J.M. Smucker*, 420 F. Supp. 3d at 665 ("Because the New Jersey action is also in federal court, this factor is not relevant and does not weigh against or in favor of either party.").  The absence of a parallel state court action renders the fourth *Grand Trunk* factor neutral in this case.

Finally, the fifth *Grand Trunk* factor requires the Court to consider whether "there is a superior alternative remedy to the federal declaratory action."  *Cardinal Health, Inc.*, 29 F.4th at 801.  "The existence of a coercive action" plays an important role in this consideration.  *AmSouth*, 386 F.3d at 791.  "And importantly, '[t]he question in these circumstances is not the order in which the actions were filed, but which action will better serve the needs and convenience of the parties.'"  *Aeroflex USA, Inc.*, 2014 WL 652912, at *6 (quoting *Foundations Worldwide, Inc. v. Oliver & Tate Enter., Inc.*, No. 1:13-cv-506, 2013 WL 4054636, at *4 (N.D. Ohio Aug. 12, 2013)).

API argues that because "threshold issues in the New York [Action] may be answered by a declaratory judgment here . . . proceeding in this Court is the most effective path forward."  (Doc. # 15 at 8).[4]  However, as discussed above, the declaratory relief sought by API will not settle the controversy between the parties and promises, at most, limited usefulness in clarifying their legal relations.  Rather, "[i]t is this Court's belief that the broader, coercive action filed in [New York] will provide a more effective avenue for resolving this matter in its entirety."  *Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *8.  The New York Action places JoySuds in "the appropriate position as the

---

[4]    API also suggests that the New York Action is not a superior alternative because "at least one defendant [in the New York Action] has filed a motion to dismiss JoySuds' claims against it for lack of personal jurisdiction in New York."  (Doc. # 15 at 8).  This suggestion appears to refer to a motion filed by Derm Cosmetic Labs, Inc.—one of the defendants in the New York Action.  Whether or not Derm Cosmetic—who is not a party to this Action—is subject to personal jurisdiction in the New York Action does not affect this Court's analysis of the fifth factor.

natural plaintiff, particularly in light of the fact that it was [JoySuds's] cease and desist letters that sparked the parties' dispute." *J.M. Smucker*, 420 F. Supp. 3d at 665 (finding that, in similar circumstances, the fifth factor weighed in favor of dismissal). Here, much of the Court's reasoning regarding the second *Grand Trunk* factor dovetails with its consideration of the fifth. Because a coercive action is currently pending which could provide a more complete resolution to the parties' various claims, the Court finds that the final *Grand Trunk* factor weighs against exercising jurisdiction. *See Lake Cumberland Reg. Hosp., LLC*, 2010 WL 11646942, at *5 (noting that the presence of a pending coercive action counseled against exercising jurisdiction).

## IV.    CONCLUSION

Looking at the *Grand Trunk* factors, then, factors one, two, three, and five weigh in favor of dismissal, while factor four is neutral. Because these factors, considered individually and in the aggregate, weigh against exercising jurisdiction, the Court declines to do so.[5]

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1)    The Court **DECLINES** to exercise its discretionary jurisdiction over this declaratory judgment matter pursuant to 28 U.S.C. § 2201;

(2)    Defendant's Motion to Dismiss (Doc. # 12) is **GRANTED**; and

(3)    This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

---

[5]    Because the Court declines to exercise its discretionary jurisdiction over API's declaratory judgment action, it need not reach JoySuds's arguments that the Court lacks personal jurisdiction, that this Court is an improper venue, or that API failed to state a claim for declaratory relief.

This 12th day of December, 2025.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-50 MOO re MTD.docx